(85 South. 219)

No. 22175.

GAULT et al. v. PINELAND NAVAL STORES CO.

(Dec. 1, 1919. Rehearing Denied March 1, 1920. Application to Correct Mandate Denied June 30, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Master and servant** ⬯281(1)—**Manager's contributory negligence held not shown.**

In action for injuries to minor employed as process manager in turpentine plant, but doing special work in altering retort caused by negligence of his assistant manager, evidence *held* insufficient to show contributory negligence.

2. **Appeal and error** ⬯173(13) — **Question largely one of law will be passed on by appellate court, though not pleaded.**

Though in action for injuries to servant defense that plaintiff was a vice principal and responsible for act of his assistant manager which caused the injury was not pleaded, appellate court will consider it where it was largely a question of law, determinable from the evidence in the record.

3. **Master and servant** ⬯189(2)—**Negligence of superior's assistant held that of coservant.**

A servant, while performing his duties as process manager in turpentine plant, could not recover for injuries resulting from negligence of his assistant manager.

4. **Master and servant** ⬯190(3)—**Negligence of assistant of superior injured while doing ordinary work held actionable.**

Process manager in a turpentine plant may recover for personal injuries caused by negligent act of his assistant manager where at time of injury manager was engaged in altering retorts in accordance with desire of management to change somewhat the system previously used and to avoid the hiring of a regular boiler maker.

5. **Master and servant** ⬯217(5)—**Risks from absence of safety devices held assumed.**

Process manager in turpentine plant injured by explosion of retort while doing the ordinary work as a boiler maker of altering the retorts assumed the risk of injury from the absence of safety devices where as process manager for four months he had knowledge of the conditions.

6. **Infants** ⬯88—**Minors; parents' action for injuries to minor son abates on attainment of majority.**

Where in action by parents, for injuries to son the son was made a party plaintiff on his becoming of age prior to trial, the action of the parents abates under Civ. Code, art. 2315.

7. **Damages** ⬯131(2)—**Servant held entitled to recover $2,302 for temporary injuries.**

A minor servant earning $100 a month, who suffered a broken leg and other wounds confining him to hospital for several weeks, and keeping him from work for several months, but was fully recovered at time of trial, was entitled to recover $2,000, plus his hospital and doctors' fees amounting to $302.

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Alfred M. Barbe, Judge.

Action by John Gault and wife against the Pineland Naval Stores Company, in which Frank Gault, on becoming of age, was made a party plaintiff. Judgment for defendant, and plaintiffs appeal. Reversed, and judgment entered for plaintiff Frank Gault.

Smith & Carmouche, of Crowley, for appellants.

A. P. Pujo and C. R. Liskow, both of Lake Charles, for appellee.

DAWKINS, J. Plaintiffs, the father and mother of Frank Gault, then a minor, brought this suit for personal injuries to their said son, alleged to have been received through the fault and negligence of the defendant. Prior to the trial Frank Gault became of age, and was made a party plaintiff.

Defendant made a general denial, and, in the alternative, averred that, if the said Frank Gault was injured, the same was caused through the negligence of a fellow servant; that he assumed the risks of his employment, and was guilty of contributory negligence.

The lower court gave judgment for defendant, and plaintiffs have appealed.

### Statement of Case.

Frank Gault commenced work for defendant in one of its process buildings, forming part of a large turpentine plant, at the age of 19 years, and, having worked under the foreman or manager of that building for about 6 months, was promoted to the position of process manager at a salary of $100 per month, and the former manager was dismissed. About the same time one Lewis was made assistant process manager under Gault.

As a part of the machinery and appliances for producing the turpentine, there were a number of large retorts or metal cylinders constructed in an upright position in the building, extending, as we gather, from the first to the second, and probably the third, floors, and with diameters of several feet. These retorts were connected with the boilers of the plant by iron pipes, through which steam was conveyed into each of them. The pine wood was cut into small pieces or chips and placed in the retorts, and, when the steam was turned in, the rosin in the chips was reduced to a vaporous form and carried off with the steam into a condensor, where both were converted to liquid, the rosin or turpentine rising to the top, and the water, because of its greater specific gravity, sinking to the bottom. The steam pressure capacity of the retorts was 30 pounds to the square inch, while that in the boilers was 80 and the flow of steam going into the retorts was regulated by hand valves in the pipes leading from the boilers. The pressure was further regulated by automatic valves on top of the retorts, which would open at a given pressure, and also by hand valves, which had to be opened whenever the necessity arose. The pipes leading from the boilers to the retorts were 2 inches in diameter up to within a few inches of the retorts, at which point they were reduced to 1½ inches. The automatic safety valves on top were one inch in diameter, and the hand valves for relieving the pressure from above were 4 inches in diameter, and were always opened whenever the automatic valves blew open (as a warning) to prevent the excess pressure of steam bursting the retorts.

Some two or three days prior to the 20th of May, 1914, the management of the turpentine plant, because of the fact that it was not proving a paying proposition, decided to make changes in the system, one of which required that certain work be done on the inside of the retorts. Lock, the general manager, and Bond, the assistant general manager, sent for plaintiff Frank Gault and discussed with him the question of these changes. He was asked if he thought he could do the work without incurring the expense to the company of employing a regular boiler maker. Gault replied that he thought he could. Accordingly, at about 7 o'clock on the morning of May 20th, he (Gault), with two or three laborers, entered one of the retorts, which, of course, was empty, and began changing

and fitting the pipes and parts as contemplated. Plaintiff's work, from time to time, took him back and forth to the shops, some distance away in another building of the plant, for the purpose of cutting and fitting the pipes, and the remainder of his time was employed in doing the work in the retort. At about 9:30 o'clock of the same day (May 20th) one of the retorts exploded, with the result that the end of the building was wrecked, and Frank Gault, who at the moment was just walking out of the door on some errand in connection with the work which he was doing, was seriously injured.

Plaintiff had had no previous experience in a turpentine plant up to the time of his employment, some ten months before, but appears to have been a bright young man, and was rapidly promoted.

It is contended by plaintiffs that, when Gault was directed to do this particular work, he was relieved of his duties as process manager, and that Lewis, his assistant, thereby became manager in charge of the building. However, they have failed to show that he was expressly relieved by a fair preponderance of the evidence, and we conclude that Gault was, at least in name, still process manager; but, because of the circumstances in which he was placed, we think he was physically unable to attend to those duties as he did before the work began.

## Opinion.

[1] Taking the defenses up in reverse order, the evidence utterly fails to show any contributory negligence on the part of Frank Gault. The thing which caused the explosion and the consequent injury was the negligence of Lewis in failing to open the four-inch hand valve to permit the escape of the excess steam in the retort which the automatic valve would not take care of. Plaintiff Frank Gault had nothing to do with this, and, even if it be conceded that, as process manager,

it was his duty to see that all matters of this sort were attended to at the time of the accident, his attention was so taken up with the work in hand it was impossible for him to have discovered the negligence and prevented the explosion.

[2] The defense that Gault was a vice principal or superior employé, and therefore responsible for the faults of those employed under him, so as to preclude his recovery for injuries arising from their negligence, is not pleaded, but, being largely a question of law, determinable from the evidence in the record bearing upon the other questions, we are, we think, warranted in passing upon it.

[3, 4] Undoubtedly, if plaintiff had been injured while performing his duties as process manager, as the result of negligence of Lewis, while in the discharge of his duties as assistant manager, plaintiff could not recover, because he was the superior officer of Lewis who was under plaintiff's direction and control. Linemueller v. Arthur, 127 La. 500, 53 South. 732, Ann. Cas. 1912A, 1008; McCormick v. Alfred S. Amer & Co., 131 La. 227, 59 South. 127.

If the laborers with whom plaintiff was at the time working, had been injured through some negligent act of his, they could not have recovered of the common employer, because plaintiff was, quoad that particular work, their fellow servant. Cyc. vol. 26, pp. 1316 and 1321; Labatt on Master and Servant, vol. 2, p. 1541, § 538. If they had been injured through Lewis' negligence, while in the discharge of his duties as assistant manager, they could unquestionably have recovered. See same authorities. Had plaintiff been injured, while so working, as the fault of these colaborers, he could not have recovered, because he was their fellow servant. In either the first or third case just given it would have made no difference that plaintiff still retained his official position as manager. The

employer's liability would turn upon the nature of the work which he was performing.

If the employer is relieved from liability to plaintiff and to others, notwithstanding his retention of his official relation, because of the nature of the particular work which he is performing, thereby forcing upon him the consequences of his temporary relation to the other labors of a fellow servant, precluding his recovery for their faults, why should he not reap the corresponding benefits of his position as a colaborer of theirs, which was the right to recover for the negligence of Lewis when acting as assistant manager?

The answer would doubtless be that he still retained his relation of superior to Lewis. But, if this were sufficient, the injured colaborer in that particular work mentioned in the first case should, with equal logic, be able to say to his employer:

"Although this man was my coemployé, you permitted him to retain his position as manager with authority over me, and you are therefore liable for the acts of your vice principal notwithstanding he was not engaged in such duties when I was injured."

To hold that plaintiff could not recover in such circumstances would be to say that an employer can in such cases reap all of the benefits and advantages of such change of duties, notwithstanding the same were brought about by his own direct orders, and incur none of the liabilities, and which is not the course of either legal or equitable principles.

[5] Plaintiff also contends that there were a number of other failures of duty on the part of the defendant, such as the absence of a reducer between the boilers and the retorts to take care of the excess pressure of the former over the latter, and the providing of a one-inch automatic safety valve to take care of the quantity of steam which came into the retort through a 1½-inch pipe; also the failure to provide outlets for water accumulating under the retort from condensed steam, and which it is claimed augmented the force of the explosion very materially because of the expanding and vaporizing of the water brought about as the effect of the vacuum created by the removal of atmospheric pressure following the initial explosion of the retort. The evidence is not altogether clear as to just how far these precautions would have gone toward preventing the explosion, but the experts called for the defendant swore that there was almost a total lack of safety devices at this particular plant. However, inasmuch as plaintiff knew of these conditions by virtue of having worked around the plant for some ten months, about four months of that time as process manager, he must have assumed the risks incident thereto, save and except to the extent of the negligence of Lewis in failing to open the hand valve as his duties required him to do.

[6] Frank Gault having become of age and now being a party plaintiff in the suit, the action of the mother and father was necessarily abated. C. C. 2315.

[7] The plaintiff was quite seriously injured, one of his legs being broken, and other wounds and contusions inflicted, which caused him to lie in hospital for several weeks. He was not able to return to his work for several months, but at the time of the trial had about recovered. He was earning $100 per month, and in view of his loss of time, suffering, etc., we think he is entitled to recover the sum of $2,000, plus his hospital and doctors' fees, amounting to $302, or a total of $2,302.

For the reasons assigned, the judgment appealed from is annulled and reversed, and it is now ordered, adjudged, and decreed that the plaintiff Frank Gault do have and recover of the defendant, Pineland Naval Stores Company, judgment in the full sum of $2,302, with legal interest from judicial demand until paid, and that defendant pay all costs.