### No. 22,831.
### First Circuit Appeal.

---

### JOHN  P.  SAVANT  v.  GOETZ  AND LAWRENCE

---

(June 30, 1925. Opinion and Decree.)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Master and Servant —Par. 101.**

Where one working under a contract with the owner of a dredge-boat employs a foreman and also another working under the foreman, he cannot recover from the owner for the negligence of his subordinates as he assumes the danger.

2. **Louisiana Digest—Master and Servant Par. 93, 101.**

Where a partnership is under a contract with the owner of a dredge-boat by which their compensation was contingent with the profits and where they had the right to quit after the first 90 days if they so preferred, shows that they were not employees of the owner of the boat but vice principals.

3. **Louisiana Digest—Master and Servant Par. 153, 154.**

Under the Employers' Liability Act No. 20 of 1914, wages cannot be fixed where there is no way under the evidence whereby they can be computed. Therefore, in a case like this no compensation can be allowed.

Appeal from the Sixteenth Judicial District, Parish of St. Landry, Hon. B. H. Pavy, Judge.

This is a suit for damages for personal injuries to plaintiff while he was on a dredge-boat. There was an alternative demand for compensation under the Employers' Liability Act No. 20 of 1914.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

R. L. Garland, of Opelousas, attorney for plaintiff, appellant.

J. Zach Spearing, of New Orleans, and Dubuisson, Perrault and Burleigh, of Opelousas, attorneys for defendant, appellee.

ELLIOTT, J. John P. Savant in company with Dr. John A. Haas and some others, on September 8, 1922, went aboard the dredge-boat engaged in digging a drainage canal for Bayou Boeuf and Waxie Drainage District. While he was standing up near the front of the boat, which was working at the time and close to Dr. Haas, the eye bolt broke which connected the boom with the cable, and by which the dipper was operated. This released the cable, which flew back with great force and violence, striking Mr. Savant across the ankles and breaking both his legs; seriously and permanently injuring him. The dredge-boat belonged to Goetz & Lawrence. He brought this suit against Goetz & Lawrence on account of his injuries.

He alleges in his petition that he visited the boat, not only because of business as an officer and member of the firm of Louisiana Construction Works, under whom Goetz & Lawrence were sub-contractors in the matter of digging the canal, but also because Goetz & Lawrence had invited him and Dr. Haas and others to visit the boat and assist in getting it properly equipped for operation, and to the end they might be able to comply with their dredging contract.

That his injuries were due to no fault or negligence on his part, but due to the fault and negligenc of Goetz & Lawrence in operating a machine with defective parts, consisting of a defective eye bolt connecting the cable around a swinging table and by which the boom was swung; that said eye bolt was defective in construction, had been made of inferior metal, etc.; that the operation of the boat with said defective and inferior material was the immediate and proximate cause of his injuries.

He claims $23,185.00 damages as the result of his injuries.

Defendants for answer deny that plaintiff, Savant, visited the dredge-boat as a member of the firm Louisiana Construction Works, and allege that he did so as the person in charge of said dredge work. They allege that on or about June 12, 1922, they entered into a written agreement with plaintiff, John P. Savant, and J. A. Perkins, whereby said Savant and Perkins, for the convenience of defendants and likewise for the convenience and profit of said Savant and Perkins, took and assumed full charge and control of the dredge-boat and dredging operation in question.

That plaintiff, Savant, took charge of said dredge-work under said agreement, did control same and directed the operations of the dredge-boat and was in full and exclusive charge and control, including its equipment and the employees engaged in operating it, at the time he was injured; that defendants did not have anything to do with or control over the boat, the equipment, the manner of its operation nor of the employees engaged therein, and nothing to do with the condition of the boat nor of the machinery and equipment thereon, nor with the handling of the same; that it was all under the exclusive control of said Savant; that if any of the machinery or equipment was defective, the use of it was due entirely to the fault and neglect of said Savant.

Mr. Savant, in response to this answer, filed an amended and supplemental petition, in which he alleges that if he was an employee of Goetz & Lawrence, as alleged in their answer, that he is entitled, as such to compensation under the law Act No. 20 of 1914, in the sum of $18.00 per week, for a period of three hundred weeks from time he was injuerd, also for the sum of $1016.00 expenses, etc. That Goetz & Lawrence had full knowledge that he had been injured, and had failed to keep posted on the boat, in a conspicious place, the notice required by Sec. 12 of Act No. 20 of 1914.

He prayed, in the case the court held that he was not entitled to damages as prayed for in his petition, that he then in that event have judgment for compensation, at $18.00 per week for three hundred weeks, and for the further sum of $1016.00 expenses, etc.

Defendants in answering plaintiff's supplemental petition, deny that his employment came within the purview and scope of the law, Act No. 20 of 1914. They aver that they had no knowledge of his injuries, except that based on newspaper reports, and did not know that he claimed compensation of them.

The district judge rejected plaintiff's demand and he appealed.

The contract of employment between Goetz & Lawrence and Savant and Perkins shows that Goetz & Lawrence employed

Savant and Perkins as their managers for the purpose of operating their Bucyrus Steel Dredge-boat for a period of ninety days, under the conditions that Savant and Perkins were to pay all expenses and cost of operating the dredge, out of the earnings of the job, from month to month, etc., under their management: Pay the past due bills and accounts, as per list attached, after which they were authorized to pay out of the earnings of the job, the amounts due Louisiana Construction Works, and any amounts due Savant and Perkins, under a contract entered into prior to the contract of June 12, 1922.

At the expiration of ninety days from date of contract Savant and Perkins had the right to continue their management of the job, provided all of the expenses of their management, and all of the debts listed had been paid in full and receipts therefor obtained, except the amount due Louisiana Construction Works and D. B. Gore Co., Inc.

After all the stipulations of the contract had been fulfilled and performed, Savant and Perkins were to receive for their services as managers 2/3 of the net profits earned on the job, and a 2/3 interest in the dredge-boat; their said interest in the dredge-boat no to operate until it had been fully paid for.

Goetz & Lawrence had the right under the contract to discharge Savant and Perkins as managers, if they failed to comply with the stipulations of the agreement. Savant and Perkins had the right, at the expiration of ninety days from the date of the contract, to discontinue their services as managers, in which event they were not to receive any compensation nor make any claim for their services rendered during the ninety days' period.

The record contains a letter from Goetz & Lawrence to John P. Savant, dated August 1, 1922, which reads: "Dear Sir: Confirming our phone conversation this will be your authority to make whatever changes you may see fit, either in equipment of barge or in crew to operate same. This applies to the Bayou Boeuf and Waxie Drainage District job, which yourself and Mr. Perkins are managing for us." See also letter from J. A. Perkins to Goetz & Lawrence the day of the accident, September 28, 1922, notifying them of what had happened; that Ross and Claycombe had quit work on the job, and requesting them to come to Opelousas on first train and attend to these matters.

The terms used in the contract, descriptive of the relations of the parties, the compensation to which Savant and Perkins were contingently entitled in the profits and in the dredge-boat, the right of Goetz & Lawrence to discharge in case the contract was not complied with, the right of Savant and Perkins to quit if they saw proper, after the first ninety days shows that Savant and Perkins became, from date of contract, vice-principals under Goetz & Lawrence in the work of dredging the canal.

The evidence shows that Mr. Savant at once took over the superintendance and control of the dredge-boat, its equipment, operation and of the employees therein and managed the job as he saw fit; hired new men and employees and put them to work on the dredge-boat and assigned to them their respective employments.

Mr. Savant hired Mr. Hudson and made him foreman on the dredge-boat. He also hired Mr. Quirk and placed him at work on the dredge under the immediate authority of Mr. Hudson. Mr. Hudson called Mr. Quirk to operate the boom and set him at it temporarily while he started a barge off after wood. It was while Mr. Quirk was operating the boom that the bolt broke and injured Mr. Savant. As Mr. Quirk was the employee of Mr. Savant and

Mr. Savant sustained his injury while standing present looking at Mr. Quirk operate the boom, he cannot under the law recover from Goetz & Lawrence damages sustained by him in the performance of the work under his own supervision.

In the case Linemueller vs. Arthur, 127 La. 500, 53 South. 732, the second clause of the syllabus reads:

"A foreman is the vice-principal of the subordinate working under his orders and assumes the danger arising out of the negligence of his subordinate, and cannot recover for injuries arising out of this negligence."

In McCormack vs. Amer & Co., 131 La. 220, 59 South. 127, cited by defendant, the same doctrine was held. · In Gault vs. Pineland Naval Stores Co., 147 La. 501, 85 South. 219, Mr. Gault was the process manager and another party named Lewis was his assistant process manager. Gault was injured through the negligence of Lewis in the work in which they were engaged, and brought suit for damages against Pineland Naval Stores Co., on account of his injuries. The court says p. 506:

"The defense that Gault was a vice-principal, superior servant and therefore responsible for the faults of those employed under him, so as to preclude his recovery for injuries arising from their negligence, is not pleaded, but being largely a question of law, determinable from the evidence in the record bearing on the question, we are warranted in passing on it, etc. ·

"Undoubtedly if plaintiff had been injured while performing his duties as process manager, as the result of the negligence of Lewis while in the discharge of his duties as assistant process manager, plaintiff cannot recover, because he was the superior officer of Lewis, who was under plaintiff's direction and control."

Citing the above cases. See also Labat, on Master and Servant, Vol. 4, p. 4048, Sec. 1412A, and Ruling Case Law, Vol. 18, p. 756, Sec. 222.

For the above reasons we find that plaintiff cannot recover damages from the defendants on the grounds claimed in his original petition.

As for plaintiff's alternative demand, the contract entered into between plaintiff and defendants does not contemplate nor provide for the payment of wages. The compensation agreed on was contingent and dependent on the fulfillment of the conditions mentioned.

The evidence shows that during the time that plaintiff was manager, and up until the time of his injury, there was no net profit that he could have claimed.

We cannot fix wages under the law on the subject of compensation Act 20 of 1914, when there is no way under the evidence whereby we can compute same by analogy or otherwise. For these reasons we are compelled to refuse his demand · on that account.

We find no error in the judgment appealed from.

· The judgment appealed from is affirmed, the plaintiff and appellant to pay the cost in both courts.